UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**LARRY LEE HUGHES**                                                                                         **PLAINTIFF**

**v.**                                                                        **CIVIL ACTION NO. 5:06-CV-P176-R**

**BILL ADAMS et al.**                                                                                    **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motions for partial summary judgment against Defendant Bill Adams (DN 40) and against County Judge Executive Van Newberry for Defendant McCracken County (DN 41). Additionally, Defendants McCracken County and Bill Adams have filed a motion for summary judgment (DN 57). The motions for summary judgment are ripe for review. For the following reasons, the Court will deny Plaintiff's motions for summary judgment and grant Defendants' motion.

### I.  STATEMENT OF FACTS

On December 18, 2005, while a pretrial detainee at the McCracken County Jail, Plaintiff was assaulted by two other inmates. The altercation resulted in injury to Plaintiff's left eye, which ultimately had to be removed. The other two inmates were charged with assault. Plaintiff, proceeding *pro se* and *in forma pauperis*, brought suit for injunctive and monetary relief against Jailer Bill Adams, the McCracken County Jail, and inmates Arthur Reed and Quinteras Lee. On initial review by this Court, the claims against inmates Reed and Lee were dismissed, as were Plaintiff's claims for injunctive relief.

### II.  ANALYSIS

**A.      Summary-judgment standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing former FED. R. CIV. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is

"entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Id*. at 323-24.

**B.**     **Plaintiff's motion for summary judgment against Defendant Adams**

In his motion for summary judgment against Defendant Adams (DN 40), Plaintiff argues that Defendant Adams was directly responsible for ensuring that his staff was properly trained and asks this Court to find that Defendant Adams failed in that obligation. Plaintiff filed in support of these motions his sworn declaration (DN 42) that prior to December 18, 2005, when he was assaulted,

> A Number of notices had been issued to the defendant, Bill Adams, Jailer, and/or his staff, through letter's or notes that were given to the jailer's staff member's; Advising the staff of the Weekly and daily Robberies, to include the assaults; Along with other abusive factors that were occurring due to the violent conduct of Arthur L. Reed and Quintarious Lee, in their ongoing attempt to run the cell block.[1]

He further states that despite the many notices having been given "to include the various minor medical incidents having been reported and or the medical treatments that had been given to various other inmates/prisoner from the pod whereby this Plaintiff was being housed; The assault's and Robberyies continued."

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

---

[1] The Court notes that much of that declaration contains legal argument and references to case law, which is not appropriate for a sworn declaration of fact. The Court therefore considers those arguments to be part of Plaintiff's motions for summary judgment and not part of his declaration.

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Respondeat superior[2] is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In other words, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999). "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003). Thus, Defendant Adam's position as jailer does not automatically make him liable for the actions/inactions of his subordinates. *See, e.g.*, *Brown v. Green*, No. 97-1117, 1997 WL 777979, at *2 (6th Cir. Dec. 12, 1997) ("Defendant Green, being sued in her official capacity as the Medical Director of the Michigan Department of Corrections, cannot be held liable for an alleged constitutional violation, because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel."); *Farrow v. West*, 320 F.3d 1235, 1238 n.1 (11th Cir. 2003) (holding that the regional director of prison medical services was not liable for actions of subordinate medical staff).

---

[2] Respondeat superior is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

Although the declaration made by Plaintiff suggests that Plaintiff knew that Defendant Adams had personal knowledge of a dangerous situation, Plaintiff's deposition testimony[3] does not support that conclusion. Plaintiff testified at his deposition:

> Q. Did you ever tell Bill Adams that [redacted] and [redacted] were causing you trouble prior to the incident?
>
> A. Not to Bill Adams, no.
>
> Q. So how was Bill Adams supposed to know about what was going on in there?
>
> A. Don English dealed with that part of it, and I guess it's the chain of command deal.
>
> * * *
>
> Q. But to your knowledge, Bill Adams didn't know about what was going on in that cell before the incident took place; is that right?
>
> A. Why not? You know, I don't know exactly what Bill Adams does other than run the jail. But whether everything made it to him, I think he got, you know, people that goes between, you know what I'm saying, that fill him in on what's going on or whatever. He might be on – available at some point in time to address some issues, who know what I'm saying, even come back to the cell block.
>
> * * *
>
> Q. Is there any reason other than the fact that he is the jailer that you think he is individually liable in the case? . . .
>
> * * *
>
> A. My answer is the reason why I think's he's liable is because my

---

[3] Plaintiff was deposed after he submitted his motion for summary judgment. A redacted transcript of that deposition has been admitted into the record, and the Court has reviewed that transcript in its entirety (DN 54).

>safety, you know, and the safety of the others in the cell block wasn't never addressed.
>
>\* \* \*
>
>Q. And he's responsible because he is the jailer; is that right?
>
>A. Because he has the final decision . . .
>
>\* \* \*
>
>Q. But you never went to Bill Adams' office and said, Mr. Adams, there's something going on in my cell and I need . . . you to help me.
>
>A. No one did.

This testimony undercuts Plaintiff's statements contained in his complaint and his declaration in support of his motions for summary judgment. Given Plaintiff's deposition testimony, it is clear that Plaintiff has no knowledge or proof that Defendant Adams in fact knew that Plaintiff or others were at risk from violent inmates but rather that Plaintiff believes that Defendant Adams should have known that fact because prison employees whom Defendant Adams supervised were aware of that fact. Because as a matter of law, Plaintiff cannot establish liability of Defendant Adams solely based on his position as supervisor, Plaintiff is not entitled to summary judgment. *See* FED. R. CIV. P. 56(c).

**C.    Plaintiff's motion for summary judgment against the County**

In his motion for summary judgment against Van Newberry, County Judge Executive of Defendant McCracken County (DN 41), Plaintiff simply argues that McCracken County is responsible for providing adequate funds for the jailer to properly train his staff.

When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so,

whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404

(1997) (indicating that plaintiff must demonstrate "deliberate conduct").

Here, Plaintiff has offered no support for a finding that McCracken County had a policy or custom that resulted in the alleged constitutional deprivation. He only conclusorily alleges that the County Judge Executive failed in his official duty to ensure that funds issued to the jailer were being used to protect Plaintiff's due process rights. Thus, the Court will deny summary judgment in favor of Plaintiff as to Defendant McCracken County.

**D.     Defendants' motion for summary judgment**

In their motion for summary judgment (DN 57), Defendants McCracken County and Bill Adams argue that Plaintiff failed to exhaust his administrative remedies.[4] They also argue that they are entitled to summary judgment because Plaintiff has not alleged or adduced facts to support a finding of an Eighth or Fourteenth Amendment violation and that warning notes passed to other jail employees are not enough to pin liability on Defendant Adams because § 1983 liability must be predicated on more than *respondeat superior*. Defendant Adams argues that even if a constitutional violation occurred, he is entitled to qualified immunity. Defendant McCracken County also argues that the claims against it must be dismissed because Plaintiff has failed to allege and prove municipal liability.

For the following reasons, the Court will grant summary judgment to Defendants on the bases that Plaintiff has not shown a violation of the Fourteenth Amendment and has not shown a

---

[4] Plaintiff has filed a response (DN 60); Defendants have filed a reply (DN 61); Plaintiff has filed a sur-response (DN 62); Defendants have filed a sur-reply (DN 63); and Plaintiff has filed a sur-sur-reply (DN 64).

policy or custom such that Defendant McCracken County can be held liable.[5]

### 1. *Deliberate indifference claim against Defendant Adams*

Defendants argue that Plaintiff as a pretrial detainee can state no Eighth Amendment claim, but that if his claim is interpreted as a Fourteenth Amendment due process claim, it fails because Plaintiff must show that Defendants actually participated in the alleged wrongful conduct. Defendants argue that if the attack by inmates Reed and Lee was more than an isolated incident then the record is devoid of that fact. Defendants further argue that Plaintiff's assertions about prior notice do not support his claim because Plaintiff admitted that the note Plaintiff alleges he wrote and gave to a prison guard (Don English) concerned theft by inmates Reed and Lee, not violence.

In the verified complaint, Plaintiff alleged that he was placed into a cell pod with a number of other inmates, all of whom were being robbed, weekly, of their personal canteen items by inmates Reed and Lee. He further alleged that, although numerous letters were written to the jailer regarding Reed and Lee, nothing was done "by the Jailer or his staff to protect the other inmate[s] or [the plaintiff] from the assaults of these two violent inmates who took personal items from inmate[s] daily and injured inmates on a daily basis." He alleged that Defendant Adams was willfully and intentionally negligent because, although incident reports, letters, and complaints were made concerning these two inmates, which Defendant Adams and his staff looked over, he was subjected to daily abuse and assaults from Reed and Lee.

---

[5] The Court is permitted to dispose of a claim that is meritless without first requiring exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(c)(2). As such, the Court does not consider and expresses no opinion on whether Plaintiff properly exhausted his administrative remedies.

In his sworn statement in support of his motion for summary judgment, Plaintiff states in pertinent part that notices had been given to Defendant Adams "and/or his staff, through letter's or notes that were given to the jailer's staff member's; Advising the staff of the Weekly and daily Robberies, to include the assaults; Along with other abusive factors that were occurring due to the violent conduct of Arthur L. Reed and Quintarious Lee . . . ."

After he filed his motions for summary judgment, Defendants deposed Plaintiff. In his deposition, Plaintiff testified that before the incident in which his eye was injured on December 18, 2005, two inmates had been "messing with . . . [b]ascially everybody in the cell block." Plaintiff testified that the day before his altercation with these inmates they had knocked another guy's tooth out, that the injured inmate had told a guard, and that the guards moved the injured inmate. When asked whether he had been harassed before December 18, 2005, Plaintiff said "yes" and when asked whether he had reported that to a guard he stated that he had written a note to Don English. When asked what the note said, Plaintiff stated,

> basically that I knowed that you have had numerous complaints about these guys stealing. And [redacted] was one of them that . . . had a big confrontation about stealing his stuff and . . . that he had wrote a note on them, which they was calling him a snitch. And everbody else in the cell block was – when they find out who was writing notes on them and snitching on them and whatever, what they were going to do, because it was about six of the same gang members in the cell block together.

Plaintiff was then asked, "[D]id your note say anything to Don English about what [redacted] was doing directly to you?" Plaintiff responded, "Yes. That . . . I was steadily getting harassed by these guys." Later, Plaintiff was asked, "Did you tell anybody that you were going to be physically assaulted by these two guys?" Plaintiff responded, "Not exactly, no. I had no idea that I would be assaulted by them, but I knew that at any given time violence could come

about, because it had been by others."

As has been discussed previously, Plaintiff's deposition testimony establishes that Plaintiff did not bring to Defendant Adams' attention the inmate assaults but believed that because Defendant Adams was in charge he should know of them through reports made to other jail personnel. When Plaintiff was asked, "Did you ever tell Bill Adams that [redacted] and [redacted] were causing you trouble prior to the incident?" He replied, "Not to Bill Adams, no." When asked, "But to your knowledge, Bill Adams didn't know about what was going on in that cell before the incident took place; is that right?" Plaintiff answered, "Why not? You know, I don't know exactly what Bill Adams does other than run the jail." When asked, "Is there any reason other than the fact that he is the jailer that you think he is individually liable in the case?" Plaintiff responded, "My answer is the reason why I think's he's liable is because my safety, you know, and the safety of the others in the cell block wasn't never addressed." Finally, when asked, "But you never went to Bill Adams' office and said, Mr. Adams, there's something going on in my cell and I need . . . you to help me." Plaintiff answered, "No one did."

The Eighth Amendment imposes a duty upon prison officials to protect prisoners in custody from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Pretrial detainees are analogously protected under the Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979). To prevail on a claim of failure to protect, an inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials subjectively knew of and disregarded that safety risk. *Farmer*, 511 U.S. at 834, 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from

circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (internal citation omitted). Further, a prison official may not escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. *Lopez v. LeMaster*, 172 F.3d 756, 762 n.5 (9th Cir. 1999) (quoting *Farmer*).

Although his complaint alleged that "the Jailer received a number of medical complaints due to [the inmates' assaults]" and referenced the "violent inmates whom the jailer is made aware thereof," Plaintiff's deposition testimony does not establish that Defendant Adams had first-hand knowledge that Plaintiff or other inmates were being troubled by inmates Reed and Lee prior to the assault on Plaintiff. Instead, Plaintiff's deposition testimony establishes his belief that Defendant Adams should have known about the prior troubles because he is in charge of safety in the jail. It is apparent that Plaintiff believed that by writing a note to prison guard Don English, the contents of that note would be passed on to Defendant Adams.

Although "warnings from the prisoner himself are not required when other evidence discloses a substantial risk of serious harm," *Woods v. Lecureaux*, 110 F.3d 1215, 1224 (6th Cir. 1997), Plaintiff has not come forward with any evidence that in fact Defendant Adams knew of and disregarded the risk that Plaintiff would be assaulted by other inmates. "Mere negligence is not sufficient . . . ." *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993). A supervisor who is not directly involved in acts that allegedly violate the Eighth Amendment

> may be held liable for failure to supervise and control his
> subordinates upon a showing that the official either encouraged the

> specific incident of misconduct or in some other way directly
> participated in it. At a minimum a plaintiff must show that the
> official at least implicitly authorized, approved, or knowingly
> acquiesced in the unconstitutional conduct of the offending
> officers.

*Id.* (internal quotation marks and citation omitted) (emphasis added). "It is clear, however, that liability cannot be based solely on the right to control employees." *Hicks*, 992 F.2d at 1455. Based upon the facts presented, Plaintiff has not shown that Defendant Adams subjectively knew of and disregarded the safety risk. Knowledge of the asserted safety risk or circumstances clearly indicating the existence of such risk is essential to a finding of deliberate indifference. *See Farmer*, 511 U.S. at 834, 837. In addition, when suing a defendant in his or her individual capacity, the plaintiff must allege the personal involvement of the defendant in causing his injury. *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1013-14 (N.D. Ohio 2004) (citing *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir. 1992)).

Although the Court does not find as Defendants assert that Plaintiff admitted that the note he wrote pertained only to thefts and not violence, the Court does find that Plaintiff's testimony establishes that Defendant Adams was not told directly of the inmates being harassed. For this reason, summary judgment on behalf of Defendant Adams is warranted.

### 2. *Claim against Defendant McCracken County*

Defendant McCracken County argues that it is entitled to summary judgment in its favor because Plaintiff has not shown a policy or custom under which it can be held liable. As already discussed in connection with Plaintiff's motion for summary judgment against Defendant McCracken County, Plaintiff has not shown a McCracken County policy or custom that was the moving force behind the constitutional violation. *Searcy*, 38 F.3d at 286. As such, as a matter of

law, Defendant McCracken County is entitled to summary judgment in its favor.

## III.  **CONCLUSION & ORDER**

For the foregoing reasons, Plaintiff's motions for summary judgment against Defendant Bill Adams (DN 40) and against County Judge Executive Van Newberry for Defendant McCracken County (DN 41) are **DENIED**.  Defendants McCracken County and Bill Adams's motion for summary judgment (DN 57) is **GRANTED**.

Date:

cc:     Plaintiff, *pro se*
        Counsel of record
4413.009